UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANK OF AMERICA, N.A.,

    Plaintiff,

v.

Case No. 17-13068
HON. DENISE PAGE HOOD

M RASHID HOLDINGS, LLC,
and MASHIYAT RASHID,

    Defendants.

_____/

**ORDER DENYING MOTION FOR ENTRY OF ORDERS APPROVING (I) BIDDING PROCEDURES, (II) SALE OF REAL PROPERTY LOCATED AT 2990 W. GRAND BLVD., DETROIT MICHIGAN, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS WITH ENCUMBRANCES ATTACHING TO THE SALE PROCEEDS, AND (III) RELATED RELIEF [#35]**

**I.    INTRODUCTION**

On October 31, 2017, the Court appointed a receiver, attorney Michael A. Stevenson (the "Receiver"), for the real property at 2990 W. Grand Blvd, Detroit, Michigan (the "Property"). On February 26, 2018, the Receiver filed a "Motion for Entry of Orders Approving (I) Bidding Procedures, (II) Sale of Real Property Located at 2990 W. Grand Blvd., Detroit, Michigan, Free and Clear of Liens, Claims, Encumbrances and Interests with Encumbrances Attaching to the Sale Proceeds, and (III) Related Relief ("Motion to Sell Property"). [Dkt. No. 35] Plaintiff Bank of

1

America filed a response indicating that it concurred with the relief sought in the Motion to Sell Property, and Defendants M. Rashid Holdings, LLC and Mashiyat Rashid filed a response in opposition to the Motion to Sell Property. A hearing on the Motion to Sell Property was held on March 13, 2018.

**II.   BACKGROUND**

Defendant M Rashid Holdings LLC ("Rashid Holdings") is the owner of the Property. Plaintiff issued a loan of approximately $2 million to Rashid Holdings dated January 30, 2017 (the "Loan Agreement"), with a mortgage on the Property securing the loan. Defendant Mashiyat Rashid ("Rashid") is a guarantor of the mortgage on the Property.

On July 6, 2017, Defendant Rashid was indicted for alleged attempt and conspiracy to commit healthcare fraud and related claims in a case before this Court (Case No. 17-20465, hereinafter referred to as "the Criminal Case"), and the Criminal Case remains pending. On October 31, 2017, the Court appointed the Receiver and granted the Receiver the following powers with respect to sale of the Property:

> 2. **Possession and Control of Receivership Property.** The Receiver is authorized to immediately take possession and control of the Receivership Property, and to manage and, if appropriate, recommend and consummate the sale of same (with such sale subject to the approval of the Court), and as is consistent with any restraining order entered in Case No. 2:17-cr-20465 (E.D. Mich.), and to otherwise exercise the powers and duties set forth in this Order. The Receiver is authorized to remove any trustee, beneficiary, representative or agent of Rashid

Holdings or Rashid from control and/or management of the affairs of the Receivership Property.

* * * * *

13. **Sale of the Mortgaged Property.** The Receiver is authorized to, on behalf and in the name of Rashid Holdings, expeditiously and diligently sell the Mortgaged Property, but only with the approval of the Court, consistent with the provisions of 28 U.S.C. § 2001(a), and any restraining order entered in Case No. 2:17-cr-20465 (E.D. Mich.), under the following conditions:

    a. The sales shall each be for cash, unless otherwise authorized by the Court, for amounts subject to the approval of the Court.

    b. The sales, approved by the Court, shall be free and clear of all mortgage interests, security interests and other liens, as applicable, which may be transferred to the net proceeds of sales. No person or entity shall have any redemption rights with respect to any sale effectuated by the Receiver, and each sale shall be final upon entry of an Order of the Court confirming same.

[Dkt. No. 21, PgID 415, 420]

## III. ANALYSIS

The Receiver seeks to sell the Property. After canvassing investors known to him, he met with persons at Jim Saros Real Estate Services, a commercial real estate broker ("Saros"), for purposes of determining the value of the Property. Saros proposed marketing the Property for the Receiver, indicating that pricing for the Property could be in the high $2,000,000s to low $3,000,000s range. The Receiver received five offers of interest on the Property before contacting Anthony Sanna at Integra Realty

Resource – Detroit, a real estate appraiser ("Sanna"), to obtain a certified appraisal of the Property. Although a certified appraisal has not been completed, the Receiver represents that Sanna estimated the value of the Property consistent with the Saros' range, and the five offers of interest were also within that range. For these reasons, the Receiver wishes to go ahead with selling the Property now, without formal marketing, and has verbally agreed with Saros to pay Saros a commission of 4% of the purchase price if Saros brings in the purchaser.

In addition to the verbal agreement with Saros, on February 21, 2018, the Receiver entered into a Purchase Agreement with Marc Nassif (the "Prospective Purchaser") for the Property. The Prospective Purchaser was not brought in by Saros. The Purchase Agreement provides for a purchase price of $3,100,000 (the "Purchase Price"), and the Property would be sold "as is/where is." The Purchase Price could be subject to higher or better bids, as discussed below. The Receiver contends that the Purchase Price is fair and reasonable because it is within the range of the Property's value, as determined by Saros and Sanna. The closing would be 66 days after the date the Court approves the bidding on the Property. If the Receiver chooses (or is ordered) to sell the Property to another person, the Prospective Purchaser would be entitled to a sum equal to his out of pocket expenses, not to exceed 3% of the Purchase Price (the "Break-Up Fee"). The Receiver suggests that such arrangements

and Break-Up Fees not exceeding 3% are reasonable because of the risk involved for the Prospective Purchase, as well as presumptively valid and common.

The Receiver has proposed some bidding procedures ("Bidding Procedures"), pursuant to which he intends to advertise and hold an Auction at his offices 28 days after the Court approves the Bidding Procedures. A competing bidder must submit an initial minimum bid equal to at least $193,000 more than the Purchase Price ("a "Qualified Bid"). Any successive bid would have to be at least $100,000 more than the last Qualifying Bid (the "Overbid Protections"). Any new bid must agree to a purchase agreement with the same terms and conditions as the Purchase Agreement (except for the higher purchase price), plus provide the Receiver with any financial information the Receiver requests. All of the bids would have to be received within 21 days of the dates after the Court approves the Bidding Procedures.

The Receiver suggests that the approval of the Bidding Procedures will maximize the value of the Property at the Auction by encouraging competitive bidding in a fair, open, and efficient manner. The Purchase Price allegedly would satisfy in full the secured claim of Plaintiff and leave a substantial amount of funds for the Government after the payment of expenses on and of the Property, as well as the Receiver's fees and expenses. The Court notes, however, that the Government has not agreed that Plaintiff would be awarded funds to satisfy its secured claim.

As noted above, Plaintiff concurs in the Receiver's request to sell the Property in the manner proposed. Defendants oppose the sale of the Property in the manner proposed for several reasons: (1) the proposed sale does not resolve the competing claims between the Government and Plaintiff for first–priority right to proceeds; (2) there is no just and compelling basis for selling the Property because it is valuable and being well-maintained as a going concern; and (3) the Criminal Case trial is less than four months away. Defendants argue that Rashid's guilt on the alleged health care fraud claims – which claims are the sole basis for the freezing of his accounts and the default of the mortgage – has not been determined, raising significant due process concerns.

Defendants' first concern – that a sale of the Property, as proposed by the Receiver – would not resolve first-priority rights – is irrelevant *vis a vis* Defendants, unless and until Defendant Rashid is determined to be not guilty and the Property is not forfeited. And, as the Receiver counters, the priority rights of the proceeds of the sale of the Property was not a concern with respect to the appointment of the Receiver.

As to the second concern, Defendants' argument is well-founded in the sense that there is no evidence that: (1) the Property is not being well-maintained; or (2) the Property's value is likely to decrease in the near future (at least not before the end of

the Criminal Case trial).  Defendants' argument that there will be a significant Break-Up Fee of $93,000 if someone other than the Prospective Purchaser is awarded the right to purchase the Property also has merit, as does their contention that traditional, formal marketing and auction efforts could yield a higher price for the Property.

In the Court's October 31, 2017 Order granting the Receiver, the Receiver was authorized to "expeditiously and diligently sell the Mortgaged Property, but only with approval of the Court, consistent with the provisions of 28 U.S.C. § 2001(a), and any restraining order entered in" the Criminal Case.  Plaintiff and the Receiver contend that the restraining order in the Criminal Case provided for sale of the Property by the Receiver.  As the Receiver states, sale of the Property will reduce administrative expenses being paid out every month to the Receiver, to the building manager, and for maintenance, taxes, and other expenses.  The Receiver notes that the Break-Up Fee will only be paid if there is a sale of the Property.

Defendants further argue that the Property should not be sold prior to an adjudication of Rashid's guilt, particularly as Plaintiff did extensive due diligence prior to entering into the Loan Agreement only six months before Rashid was indicted in the Criminal Case.  Defendants argue that, because Michigan is a "lien" state, they have redemption rights – though they acknowledge that they would be unable to redeem at this time because all of their assets are frozen due to the charges in the

Criminal Case. Defendants argue that Plaintiff and the Receiver have not identified any compelling reason to immediately sell the Property.

The Court concludes that it would be premature to grant the Receiver's Motion to Sell Property. Although the Receiver has arranged for a Purchaser and has proposed Bidding Procedures for an Auction, the Court is not persuaded that the Property should be sold at this time. Most importantly, the absence of formal marketing of the Property likely limits the scope of potential purchasers, such that the maximum value of the Property may not be attained. Second, the requirement that a buyer other than the Purchaser has to submit a bid of at least $193,000 over the Purchase Price may impact the willingness of a potential purchaser to submit a bid over the Purchase Price. Third, it is well-recognized, even by Plaintiff and the Receiver, that the value of the Property, like the value of real estate in the area of Detroit in which it is located, is unlikely to decrease in the near future. Accordingly, the Court finds that delaying the sale of the Property to allow for formal marketing and the trial in the Criminal Case is unlikely to affect the purchase price the Receiver will be able to obtain for the Property. The Court denies the Receiver's Motion to Sell Property.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that the Receiver's Motion to Sell Property [Dkt. No. 35] is **DENIED**.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: April 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 17, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager